## STATE v. ROBERT HUGH ROBINSON.*

114 N. W. (2d) 737.

March 2, 1962—No. 38,265.

*Certiorari denied, 371 U. S. —, 83 S. Ct. 26, — L. ed.(2d) —.

*Walter F. Mondale,* Attorney General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for the state.

*Joseph Robbie,* for defendant.

*John S. Connolly* and *Andrew B. Kjos,* for Ramsey County Public Defender, amicus curiae.

OTIS, JUSTICE.

This opinion is written pursuant to a reassignment made effective January 10, 1962. The issues here for decision arise out of an order of the district court denying motions to dismiss an indictment charging appellant with the crime of indecent assault. In entering its order the trial court, pursuant to Minn. St. 632.10, certified the following questions as doubtful and important:

"1. Under the circumstances disclosed by the record, upon which there is no dispute, does the indictment charging Indecent Assault, the object of the burglary charged in the previous indictment for which the defendant was tried and found not guilty by a jury, and a trial thereupon, constitute double jeopardy within the meaning of Article 5 of the Constitution of the State of Minnesota?

"2. Does the lapse of time between the arrest in June, 1959 and the indictment for said Indecent Assault in 1960 deprive the defendant of his right to a speedy trial, as provided in Article 6 of the Constitution of Minnesota?"

In answer to the first question, the matter is remanded for further proceedings pursuant to the decision we here reach. With respect to the second question, our answer is in the negative.

The pertinent facts governing a disposition of this matter are set forth in a stipulation entered by the county attorney and defendant's counsel. It appears that on May 25, 1959, an intruder entered the home of one Martha Hartwell at 1533 Van Buren Street in the city

of St. Paul and took indecent liberties with her daughter, Lucella Hartwell. On June 23, 1959, defendant was charged with burglary in the second degree pursuant to the following indictment:

"The said Robert Hugh Robinson on the 25th day of May, A. D. 1959, at the City of St. Paul in said County, then and there being, did wrongfully, unlawfully, feloniously and burglariously break and enter the dwelling house of one Martha Hartwell, said dwelling house being then and there a building situate in said City, County and State, in which said dwelling there were then and there human beings, to wit: Martha Hartwell and Lucella Hartwell, with the intent then and there had and entertained by him, the said Robert Hugh Robinson, to commit a crime therein, to wit: Assault, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Minnesota."

After a trial for this offense the defendant was acquitted by a jury in the District Court of Ramsey County. In June of 1960 the Hartwell home was again invaded and defendant was again apprehended, but instead of being prosecuted for this offense defendant was charged with indecent assault pursuant to the following indictment:

"The said Robert Hugh Robinson on the 25th day of May A.D. 1959, at the City of St. Paul in said County then and there being, did wilfully, unlawfully and feloniously take indecent liberties without her consent expressly given with and on the person of one Lucella Hartwell; she, the said Lucella Hartwell, being then and there over the age of sixteen years and not a public prostitute, which said acts of him, the said Robert Hugh Robinson, did not in law amount to a rape, an attempt to commit a rape, or an assault with intent to commit rape."

As a part of their stipulation the state and the defendant agree that the assault referred to in the burglary indictment and the indecent assault alleged in the second indictment arose out of the same incident at 1533 Van Buren Street on May 25, 1959. The stipulation provides that the physical violence inflicted upon Lucella Hartwell on May 25, 1959, at 1533 Van Buren Street, St. Paul, furnished the factual basis for both the assault which was the object of the burglary and

the indecent assault for which defendant is here indicted. In July 1960 the defendant moved to dismiss the indictment for indecent assault on the ground that it is in violation of his constitutional right against double jeopardy and for the further reason that it is barred under the doctrine of res judicata. Subsequently he moved to dismiss the indictment because it denies defendant a speedy trial. The trial court, having denied defendant's motions, certified the questions here for review as doubtful and important.

The two questions certified by the trial court inadvertently allude to Minn. Const. arts. 5 and 6, whereas the correct reference is to U. S. Const. Amends. V and VI. Comparable provisions of the Minnesota Constitution are found in art. 1, § 7, dealing with double jeopardy, and art. 1, § 6, dealing with speedy trials.

■ No attempt is made by the defendant to distinguish State v. Hackett, 47 Minn. 425, 50 N. W. 472, but he characterizes its holding as "archaic." In that case the defendant was convicted of grand larceny after a prior acquittal for burglary, the object of which was the same larceny for which he was subsequently prosecuted. We held that Minn. St. 621.12 authorized the second prosecution and that it did not constitute a violation of defendant's right not to be twice put in jeopardy. We here decline to overrule the Hackett decision. The authorities cited by defendant do not require a different conclusion.[1] Minn. St. 621.12 reads thus:

"Every person who, having entered a building under such circumstances as to constitute burglary in any degree, shall commit any crime therein, shall be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

■ The problems we here face do not involve the principles of double jeopardy as much as the doctrine of res judicata or collateral estoppel. The question is whether the record requires us to hold that there was implicit in the verdict of "not guilty" in the burglary prosecution a finding that defendant established an alibi which bars

---

[1]State v. Fredlund, 200 Minn. 44, 47, 273 N. W. 353, 355, 113 A. L. R. 215; State v. Thompson, 241 Minn. 59, 62 N. W. (2d) 512. See, also, Minn. St. 610.21 and 631.01.

his prosecution for indecent assault. We are of the opinion that the record is too sketchy and fragmentary to permit such a holding.

The record which has been presented consists only of a stipulation between the prosecuting attorney and the defendant's attorney, a portion of the court's charge in the burglary case, the certification of the important and doubtful questions, and the consent of the defendant to having the questions certified. The state has stipulated that the person who committed the burglary on May 25, 1959, was the same person who committed the assault on that date. Paragraph II of the stipulation further provides as follows:

"* * * The Defendant was found not guilty of being the burglar who so broke and entered the Hartwell dwelling house."

Literally construed, this statement would seem to concede that the alibi defense prompted defendant's acquittal. However, such a conclusion does not jibe with the position the state has elsewhere taken in its brief and argument, and the statement appears to us to be sufficiently ambiguous to leave the question open.

The record does not support defendant's claim that his only defense was an alibi. Without a transcript we can only speculate on what the defendant's evidence was. Neither do we have before us the closing argument of defendant's counsel or the full charge to the jury in the burglary case. The trial court did instruct the jury that the defendant denied having taken part in the crime which was committed May 25, 1959, in the following language:

"Now, it is the contention of the defendant that he had no part in any breaking and entering of the Hartwell home in the early morning of May 25, 1959, and shortly after midnight of May 24, 1959, and that if any crime was committed by anyone he had no part in it. The defendant further contends that he did not commit any assault on either Martha Hartwell or Lucella Hartwell, and that since he did not break and enter into the Hartwell home at that time or any other time, he could not have entered the Hartwell home with the intent to commit the crime of assault therein. The defendant further contends that while he was absent from his home from some time in the afternoon, he returned home at approximately midnight and stayed there, and there-

fore could not have committed the offense with which he has been charged."

However, it is significant that immediately following this part of the charge the court continued as follows:

"* * * In general it is fair to say that the *defendant categorically denies the claims made by the State,* and further contends that the *State has not sustained its burden of proving his guilt beyond a reasonable doubt."* (Italics supplied.)

In other words, from the inadequate record before us it appears that defendant put the state to its proof with respect to all of the elements of the crime. He did not stipulate that a burglary had been committed and that the only issue for the jury was the question of his identity or implication in the offense. Had he done so, the acquittal in the burglary trial would obviously be res judicata in the assault prosecution and would bar further proceedings against this defendant arising out of the events of May 25, 1959.

The difficulty which courts have had with the concept of res judicata or collateral estoppel in criminal matters ordinarily has not stemmed from a reluctance to adopt the principle of the doctrine. The struggle has revolved around its application to particular fact situations, such as the dilemma facing the court in the case at bar. We are wholly in the dark as to whether the jury decided that defendant did break and enter the Hartwell home but did not then intend to commit an assault, or whether the jury determined that the state had failed to prove a felonious breaking and entering, or whether the jury did indeed find defendant had proved a valid alibi.

■ Although an attempt has been made by defendant to prove, through the affidavits of various jurors, that they found defendant was not actually present at the time the burglary was committed, such an invasion into the jury's deliberations is an intrusion which the law does not sanction and to which no weight can be given. In Fayerweather v. Ritch, 195 U. S. 276, 306, 25 S. Ct. 58, 67, 49 L. ed. 193, 213, the United States Supreme Court made the following observation:

"But it is proper to say that the secret deliberations of the jury,

or grounds of their proceedings while engaged in making up their verdict, are not competent or admissible evidence of the issues or finding. The jurors oftentimes, though they may concur in the result, differ as to the grounds or reasons upon which they arrive at it.

"The evidence should be confined to the points in controversy on the former trial, to the testimony given by the parties, and to the questions submitted to the jury for their consideration, and then the record furnishes the only proper proof of the verdict.

\* \* \* \* \*

"\* \* \* A judgment is a solemn record. Parties have a right to rely upon it. It should not lightly be disturbed, and ought never to be overthrown or limited by the oral testimony of a judge or juror of what he had in mind at the time of the decision. Undoubtedly, when the pleadings are general, as in a case of the common counts, evidence may be given of the testimony which was introduced on the trial, for that may disclose what must have been considered and determined. And where the evidence is that testimony was offered at the prior trial upon several distinct issues, the decision of any one of which would justify the verdict or judgment, then the conclusion must be that the prior decision is not an adjudication upon any particular issue or issues, and the plea of *res judicata* must fail."

■ While our attention has not been called to any Minnesota criminal case dealing with collateral estoppel, our Federal court has recognized the doctrine in United States v. J. R. Watkins Co. (D. Minn.) 127 F. Supp. 97, 101. Cases which have held that an alibi, asserted in one case, is res judicata with respect to a second prosecution arising out of the same events uniformly find that the only issue litigated in the first case was the alibi defense. People v. Grzesczak, 77 Misc. 202, 137 N. Y. S. 538; Harris v. State, 193 Ga. 109, 17 S. E. (2d) 573, 147 A. L. R. 980. In the Grzesczak case the court stated that the defendant did not deny the crime was in fact committed, but relied entirely on an alibi. By the same token, the court in the Harris case observed that in the first trial there was no pretense of justification, but the whole contention centered on the single question of whether defendant participated in the offense. The court held that his acquittal

in the first case necessarily required a finding that he did not participate in the transaction and that this was the sole issue tried and determined. A similar result was reached in United States v. DeAngelo (3 Cir.) 138 F. (2d) 466.

The Supreme Court of the State of Washington came to grips with these matters in State v. Barton, 5 Wash. (2d) 234, 105 P. (2d) 63. There the defendant was tried and acquitted of murder and was subsequently charged with having committed a robbery on the same victim. In the second prosecution defendant claimed that his sole defense in the first trial was an alibi, and that his acquittal was a final adjudication of whether he participated in either crime. The court rejected this contention, pointing out that the plea of "not guilty" had placed every material allegation of the information in issue and required the state to prove them all beyond a reasonable doubt. The Washington court stated (5 Wash. [2d] 241, 105 P. [2d] 67):

"* * * It is not possible to determine whether the jurors returned a verdict of acquittal because they credited the testimony in support of appellant's alibi, or for the reason that they found the state's evidence insufficient as to one or more essential elements of the offense charged."

A number of other courts have reached the same conclusion.[2] The leading case on the subject arose out of a criminal trial in the State of New Jersey, State v. Hoag, 21 N. J. 496, 122 A. (2d) 628, affirmed, 356 U. S. 464, 78 S. Ct. 829, 2 L. ed. (2d) 913.[3] That prosecution involved a robbery committed against five victims. The defendant was first prosecuted for robbing three of the victims and interposed an alibi as a defense. He was acquitted. Subsequently, the state prosecuted the same defendant for robbing the fourth victim and defendant was convicted. In a 4-to-3 decision, the Supreme Court of New

[2]State v. Orth, 106 Ohio App. 35, 153 N. E. (2d) 394, appeal dismissed, 167 Ohio St. 388, 148 N. E. (2d) 917; State v. Feinzilber, 76 Nev. 142, 350 P. (2d) 399; Adams v. United States (5 Cir.) 287 F. (2d) 399. See, People v. Rodgers, 184 App. Div. 461, 464 to 466, 171 N. Y. S. 451, 453 to 454.

[3]74 Harv. L. Rev. 35.

Jersey upheld the conviction and was sustained by a 5-to-3 decision of the United States Supreme Court. The New Jersey court held that the principles involved had to do with collateral estoppel rather than res judicata, each indictment being a separate cause of action. The majority simply held that there was no way of knowing on what ground defendant was acquitted in the first prosecution, whether because the jury believed his alibi or because of a general insufficiency in the state's proof. The prevailing opinion in the United States Supreme Court also treats the problem as one of collateral estoppel, which they describe as an aspect of the broader doctrine of res judicata, designed to eliminate the expense, vexation, waste, and possible inconsistent results of duplicatory litigation. The supreme court concluded that it would have to embark on sheer speculation in order to sustain the defendant's claim that the jury had determined the issue of identity in his favor. It held that the New Jersey Supreme Court did not exceed constitutional bounds in concluding that the jury might have acquitted defendant because it didn't believe that the victims of the first robbery had been put in fear, or that property had been taken from them, or for other reasons unrelated to the issue of identity. The dissent of Mr. Chief Justice Warren notes that the record fails to show what was in the mind of each juror, but suggests that even a special interrogatory might not settle the issue of the robber's identity. The Chief Justice states that he is satisfied from an examination of the record that the only *contested* issue was whether defendant was actually one of the robbers since the other elements of the crime were not challenged.

An exhaustive treatment of this subject, in a decision which sustained the defendant on the issue of collateral estoppel arising out of an alibi, may be found in People v. De Sisto, 27 Misc. (2d) 217, 236, 252, 214 N. Y. S. (2d) 858, 881, 897.[4]

---

[4]See, also, Annotation, 147 A. L. R. 1003; Gershenson, *Res Judicata in Successive Criminal Prosecutions*, 24 Brooklyn L. Rev. 12; Kircheimer, *The Act, the Offense and Double Jeopardy*, 58 Yale L. J. 513, 532; Lugar, *Criminal Law, Double Jeopardy and Res Judicata*, 39 Iowa L. Rev. 317; Note, 24 Minn. L. Rev. 522, 538; Schmidt, *Res Adjudicata in Criminal*

88

We are of the opinion that where an alibi is advanced by the defendant in the first trial as only one of several defenses, his acquittal does not factually or logically require a finding that the jury determined the alibi question in his favor. If a more extensive record in this case, including the testimony of defendant and his witnesses, the closing argument of defendant's counsel, and the full charge of the court, satisfies the trial court that no other issue was raised or submitted by defendant, the trial court will dismiss the indictment for assault under the doctrine of collateral estoppel. For the reasons stated, the matter is remanded to afford defendant an opportunity to make such a showing, and in the event of his inability to do so, he will be tried under the indictment for assault.

■ There is no merit in the defendant's claim that, because he was not indicted or taken into custody until more than a year after the offense alleged, he has been denied a speedy trial. Ordinarily, the constitutional protection of a speedy trial envelops defendant only from the time he is taken into custody and indicates to the court that he is prepared to go forward. State v. Artz, 154 Minn. 290, 191 N. W. 605; State v. McTague, 173 Minn. 153, 216 N. W. 787; State v. Dehler, 257 Minn. 549, 556, 102 N. W. (2d) 696, 702; State ex rel. McGregor v. Rigg, 260 Minn. 141, 109 N. W. (2d) 310; State v. Castle, 260 Minn. 293, 109 N. W. (2d) 593.[5] In the case at bar defendant was apprehended on June 14, 1960, indicted for assault on June 28, 1960, arraigned and entered a plea of not guilty on June 30, 1960, and moved to dismiss the indictment on July 12, 1960. The trial court allowed counsel 30 days in which to file briefs, during which period defendant made additional motions, all of them being heard by the court on September 12, 1960. On September 20, 1960, the court denied defendant's motion to dismiss the indictment but on motion of defendant's counsel certified to us as important and doubtful the two questions here for decision. The defendant, having been advised of the delay which would inevitably result from certifying

Cases, 26 Calif. B. J. 366; United States v. Kramer (2 Cir.) 289 F. (2d) 909.

[5]See, also, Minn. St. 611.04.

the questions, consented in writing to this procedure. Bail originally fixed at $10,000 was reduced to $5,000 on October 10, 1960. At no point does the record show any request, formal or informal, on the part of defendant or his counsel, for immediate trial.

The primary purpose of the constitutional protection being to obviate protracted custody without an adjudication, we hold that where a defendant has made no request to the court that his case be sent out, a lapse of 90 days under the circumstances here described is not a denial of his constitutional right to a speedy trial. The second question certified is therefore answered in the negative.

■ There is inserted in the briefs of both defendant and the state extraneous and irrelevant material, calculated on the one hand to stir our sympathy for defendant, and on the other to arouse hostility against him. Such excursions from the record are designed to distract us from reaching a decision based on the law and invite us to ignore logic and precedent. They are improper and should be stricken.

Remanded with directions.

Knutson, Chief Justice (concurring specially).

In order that there may be a majority of the court to answer the questions submitted to us by the trial court, I reluctantly concur in the result reached by Mr. Justice Otis.

I think that the first question submitted to us should be answered in the negative without any qualifications. What we are now doing is to remand the case with leave to defendant to do something that in my opinion is impossible. The only way that it could be known that the jury decided the case exclusively on the grounds of an alibi would be if the court submitted the case to the jury on the theory that unless they found an alibi they must find defendant guilty as charged. Were such an instruction given, it is obvious that we would promptly reverse.

In every criminal case it is necessary that the jury be unanimous in a decision for either a conviction or an acquittal. No one can now know on what basis any of the 12 members of the jury voted for an acquittal. It is necessary that the jury be instructed that the defendant is clothed with the presumption of innocence and that the state must

prove every essential element of the crime beyond a reasonable doubt before there can be a conviction. For all that anyone knows, there may be 12 reasons why the 12 members of the jury vote for an acquittal. As a matter of fact, they can vote for an acquittal even though they have no reason at all. It is obviously for that reason that Minn. St. 621.12 was enacted, which reads:

"Every person who, having entered a building under such circumstances as to constitute burglary in any degree, shall commit any crime therein, shall be punished therefor as well as for the burglary, and may be prosecuted for each crime separately."

In State v. Hackett, 47 Minn. 425, 50 N. W. 472, the question involved here was answered as clearly as it can be answered. Hackett was indicted, charged with, and convicted of the crime of grand larceny in the second degree. He appealed from an order denying a new trial. He was also indicted, tried, and acquitted of the crime of burglary in the first degree. In this latter trial, testimony was introduced tending to show that at the same time and place of the alleged burglary defendant stole the property described in the grand larceny indictment. This testimony was produced for the purpose of proving an intent to commit and the commission of the crime of burglary. The court held that the larceny and the alleged burglary were committed and were parts of the same transaction. The court referred to our statute, Penal Code of 1886, § 393, which stated that "[a] person who, having entered a building under such circumstances as to constitute burglary in any degree, commits any crime therein, is punishable therefor, as well as for the burglary; and may be prosecuted for each crime separately," and pointed out that (47 Minn. 427, 50 N. W. 473) "[a]lthough declared by statute, this is no new statement of the law applicable to the case at bar."

Here, the state was required to prove beyond a reasonable doubt that defendant (1) with the intent to commit some crime therein, (2) broke into, and (3) entered the dwelling house of another, in which (4) there was a human being, (5) under circumstances not amounting to burglary in the first degree, before defendant could be convicted. How it is now possible to show that the jury based its verdict entirely

upon a finding that defendant was not at the place of the alleged burglary is something that it is impossible for me to comprehend.

It may be true that there are authorities to the contrary, but our statute and our case law permit the indictment and trial of a defendant for both the burglary and the crime alleged to have been committed as the foundation for the burglary charge, and I think we need go no further than our own opinions. If we must do so, I think that the case of Hoag v. New Jersey, 21 N. J. 496, 122 A. (2d) 628, affirmed, 356 U. S. 464, 78 S. Ct. 829, 2 L. ed. (2d) 913, contains a most convincing argument in favor of so holding.

The Washington court in State v. Barton, 5 Wash. (2d) 234, 105 P. (2d) 63, came to the same conclusion, and the quotation contained in the opinion of Mr. Justice Otis from that case is in my opinion unanswerable. How a defendant can now go back and show—either from the transcript, the court's charge, or the arguments of the attorneys—that the only issue submitted to the jury upon which it based its decision was an alibi is incredible to me. Even though the county attorney may have stipulated that defendant was acquitted on the issue of identity raised by his alibi, such stipulation, in my opinion, must be disregarded since no county attorney has any more right to speculate as to the reason for a jury's verdict than does the court or anyone else. It may be that the county attorney may try a criminal case on a stipulation of facts and the issues entered into between the parties after he has carefully investigated the facts, but that does not authorize him to stipulate on appeal what he thinks the jury may have based its decision on where several issues are involved, such as we have here. I therefore think that the question submitted should be answered in the negative without any qualification as is required by both statute and case law in this state.

Our former chief justice, Roger L. Dell, who took part in the hearing and consideration of this case, resigned before the opinion was issued. He was of the same opinion as I am as shown herein.

THOMAS GALLAGHER, JUSTICE (dissenting).

The stipulated facts which form the basis for these proceedings indicate the following: On May 25, 1959, the Hartwell residence at

1533 Van Buren, St. Paul, in which Martha Hartwell and Lucella Hartwell, her daughter, were residents, was broken into by a man at about 12:30 a. m. At that time the intruder grasped Lucella Hartwell by the arm and forced her to accompany him into the second-floor bedroom occupied by Martha Hartwell. There he grabbed a telephone from the hands of Lucella Hartwell, ripped the sheet into strips with which he tied Martha Hartwell, and thereafter inflicted numerous indignities upon both of the Hartwells. In the course of his presence there, Lucella struck this intruder with a cutglass flower vase, causing him to bleed. As a result of a police inquiry, defendant was taken into custody for these offenses on June 5, 1959. On June 23, 1959, he was indicted and thereafter tried for burglary with the intent to commit assault. At his trial some 19 witnesses appeared and testified. He was acquitted on January 22, 1960.

On June 14, 1960, at 2:30 a. m., the St. Paul Police Department received a call concerning another break-in at the Hartwell residence. Responding police officers found there that a basement window and a doorway between the basement and first floor had been broken but that no intruder was then present. They then traveled one-half mile to defendant's residence at 919 North Snelling Avenue but found that defendant was absent. Leaving this house, the officers traveled back toward the Hartwell residence. En route they found defendant walking along Snelling Avenue about midpoint between the two residences. At that time, they examined him and found that his clothes were disheveled and dirty; and that in his pocket was a small notebook which disclosed a notation giving the residence address and telephone number of Lucella Hartwell. He was taken to a St. Paul police station and there booked on suspicion of burglary. His clothing and portions of the broken window found at 1533 Van Buren were then sent to the State Bureau of Criminal Apprehension for laboratory examination. He was arrested on suspicion that he was the person who was guilty of unlawful entry on this occasion.

On June 28, 1960, testimony of various witnesses was submitted to a grand jury of Ramsey County relative to the break-in of *May 25, 1959,* and the second break-in of June 14, 1960. This jury was advised that as to the first break-in defendant had been indicted and

tried for burglary in the second degree with intent to assault, and had been found not guilty therein. The grand jury thereupon returned an indictment in the following language:

"The said Robert Hugh Robinson on the 25th day of May A. D. 1959, at the City of St. Paul in said County then and there being, did wilfully, unlawfully and feloniously take indecent liberties without her consent expressly given, with and on the person of one Lucella Hartwell; she, the said Lucella Hartwell, being then and there over the age of sixteen years and not a public prostitute, which said acts of him, the said Robert Hugh Robinson, did not in law amount to a rape, an attempt to commit a rape, or an assault with intent to commit a rape."

At the first trial in which defendant was acquitted, the instructions to the jury included the following:

"It is the contention of the State that in the early morning of May 25, 1959, and shortly after midnight of May 24, 1959, the defendant broke and entered the dwelling house of Martha Hartwell, said dwelling house being located at 1533 Van Buren Avenue * * *; that at the time of such breaking and entering into said dwelling house there were then and there present in said dwelling house * * * Martha Hartwell and Lucella Hartwell; that the said breaking and entering * * * by * * * defendant was with the intention to commit the crime of assault in said dwelling house. * * * The State further contends that the defendant was in said dwelling house for approximately 45 minutes, and during this time *assaulted both Martha Hartwell and Lucella Hartwell by applying actual force to and inflicting immediate injury to the persons of Martha Hartwell and Lucella Hartwell.* * * *

"* * * The defendant further contends that he did not commit any assault on either Martha Hartwell or Lucella Hartwell, and that since he did not break and enter into the Hartwell home at that time or any other time, he could not have entered the Hartwell home with the intent to commit the crime of assault therein." (Italics supplied.)

As indicated above, this jury returned a verdict of not guilty. On June 30, 1960, defendant was arraigned on an indictment dated June

28, 1960, which related to the acts transpiring on May 25, 1959, and had no relationship to the unlawful entry of June 14, 1960. On June 30, 1960, he entered a plea of not guilty thereto.

On July 12, 1960, defendant moved for dismissal on the ground that to be tried thereon would place him in double jeopardy and later on the ground that it would constitute a denial of his right to a speedy trial. On September 12, 1960, the District Court of Ramsey County entered an order denying this motion. On September 20, 1960, pursuant to Minn. St. 632.10, it certified to this court for determination the following "doubtful and important" questions:

"1. Under the circumstances disclosed by the record, upon which there is no dispute, does the indictment charging Indecent Assault, the object of the burglary charged in the previous indictment for which the defendant was tried and found not guilty by a jury, and a trial thereupon, constitute double jeopardy within the meaning of Article 5 of the Constitution of the State of Minnesota?

"2. Does the lapse of time between the arrest in June, 1959 and the indictment for said Indecent Assault in 1960 deprive the defendant of his right to a speedy trial, as provided in Article 6 of the Constitution of Minnesota?"

The state relies upon Minn. St. 621.12 which provides: "Every person who, having entered a building under such circumstances as to constitute burglary in any degree, shall commit any crime therein, shall be punished therefor as well as for the burglary, and may be prosecuted for each crime separately"; and State v. Hackett, 47 Minn. 425, 50 N. W. 472, which held that under this section a person acquitted of the crime of burglary might nevertheless be prosecuted later for larceny committed in the course of the burglary involved. This was based on the theory that any evidence relative to larceny must have been received in the prior prosecution as part of the res gestae relative to the burglary, since there had been no charge of larceny and no prosecution therefor in such proceedings.

In the instant case, at the prior trial defendant was acquitted of the crime of burglary in the second degree with the intent to assault, and it would seem clear that this determination constitutes a bar to his

prosecution now under an indictment for indecent assault arising out of the identical factual situation. In the former proceedings the testimony received in evidence was relevant both to the crime of burglary and to the crime of assault. The same evidence of necessity would have to be submitted if defendant's guilt under the second indictment is to be established. In State v. Thompson, 241 Minn. 59, 64, 62 N. W. (2d) 512, 517, we stated:

"* * * it may be said that two offenses are identical so that a prosecution for one is a bar to a prosecution for the second:

"(1) If the evidentiary facts essential to establish the requisite elements of the offense charged in the second indictment would have been admissible under the first indictment—or information—to establish the elements of the offense charged therein and, *if proved,* would necessarily have resulted in a conviction under the first indictment, * * *."

Since it is clear that here the evidence required to convict defendant under the second indictment was submitted and received as relevant to his innocence or guilt under the first indictment, the jury's determination therein should constitute a bar to his prosecution under the second indictment.

At the first trial defendant's sole defense was that he was not the person described in the indictment charged with burglary in the second degree with the intent to commit assault. All evidence submitted by either side in this trial was received on the only theory of the defense—that the person who had assaulted the Hartwells on May 25, 1959, was the same person as the one who had broken into and entered their residence on that date, and that such person was not the defendant. The jury was definitely instructed that the person who had broken into the Hartwell residence was the same person who had then committed the assault upon the Hartwells. Under the indictment of June 28, 1960, the state now seeks to convict defendant by evidence of the identical factual situation under which the first jury determined that he was not the person who had unlawfully entered the Hartwell residence on May 25, 1959, and at that time committed the assault with which defendant is charged in the new indictment.

Certainly, it would be grossly illogical to conclude that defendant's acquittal meant either that the first jury thereby determined that he was the burglar, but was not guilty of the charge because he did not intend an assault; or that he was not the burglar and because he was not that, he was not guilty under the indictment even though he intended the assault. The evidence in the prior prosecution compels the conclusion that the burglar there was the one who committed the assault. No one contended otherwise and the court so instructed the jury. Likewise, such evidence compels the conclusion that the person who committed the assault was not an invitee but a burglar. Under such circumstances, it is clear that the second prosecution is barred by the prior verdict. To hold otherwise brings about the absurd conclusion that although defendant is not the burglar who broke into and entered the Hartwell residence with intent to assault and who committed the assault on that occasion, nevertheless, he must again face trial on the charge that he is the burglar and did commit the assault described. I cannot adhere to any such medieval concept of due process or justice.

NELSON, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Thomas Gallagher.

MR. JUSTICE ROGOSHESKE, not having been a member of the court at the time of the submission, took no part in the consideration or decision of this case.