## STATE v. RALPH ARNOLD EMANUELSON.

128 N. W. (2d) 88.

April 17, 1964—No. 39,153.

*E. John Abdo,* for appellant.

*Walter F. Mondale,* Attorney General, *George M. Scott,* County Attorney, and *Philip J. Bloedel,* Assistant County Attorney, for respondent.

74

SHERAN, JUSTICE.

Appeal from a judgment of the district court upon a conviction of the crime of robbery in the second degree.

On November 19, 1962, at about 10:30 p. m., Melville W. Olson was robbed of a wristwatch worth about $50 and of $28 consisting of two tens, one five, and three one dollar bills. The place of the crime was near the entrance to a building at 1600 Fourth Avenue South in Minneapolis and about one block from the Pop Inn Tavern, from which the victim had come and where defendant had been observed before the offense. Acting on a tip from an unidentified person, Officers John Daley and Frank Kaminsky located and arrested defendant at the Pop Inn. An information charging him with robbery in the second degree was filed on December 14, 1962, and trial began on January 16, 1963. The jury found defendant guilty. He was sentenced to an indeterminate term not to exceed 15 years and committed to the State Prison at Stillwater.

Upon this appeal it is contended (1) that the verdict is not justified by the evidence; (2) that defendant was denied his right to a speedy trial; (3) that the defendant was not afforded adequate assistance by counsel; and (4) that defendant was denied due process of law in that he was not accorded a fair trial.

■ The verdict is sustained by the evidence. The victim identified defendant as the person who robbed him. Within a half hour of the robbery time, defendant was found to be in possession of the stolen wristwatch and $22 (two tens and two one dollar bills). The assertion of the defendant that during this interval he bought the wristwatch from a friend, Freddie Goodthunder, in the Pop Inn restroom does not compel belief. His initial denial that he had in his possession the amount of money later revealed by a search, followed by an explanation to the effect that he had borrowed money from a friend, and crowned by his testimony at trial that the money came from the sale of leather goods, are inconsistencies which corrode his claim of innocence. Defendant admits he was in the Pop Inn shortly before the time of the crime. There is credible testimony that he was not there at a time probably coincident with the robbery, and that when he returned

he ordered beer for others, commenting: "When I make a score, everybody drinks." Also, according to one witness, he then complained that he had hurt his hand in a fight—a significant statement when coupled with the victim's description of having been beaten by the man who assailed and robbed him. This was not a case for a directed verdict of acquittal.

■ Defendant was not denied his constitutional right to a speedy trial. Complaint was filed in the municipal court of the city of Minneapolis on November 27, 1962, charging defendant with the robbery of Mr. Olson on November 19. After his arrest on November 19, a stay of execution of a 20-day sentence previously imposed on a drunk charge was revoked and he was sent to the workhouse. On December 14, 1962, an information charging the robbery was filed with the Hennepin County District Court. Trial on that charge began on January 16, 1963. He was sentenced on January 24, 1963. Only 2 months elapsed from the date the crime was committed to the date on which the jury verdict of guilty was returned. There is no showing that the defendant demanded trial at an earlier date. He was tried with reasonable dispatch as required by the decisions of this court. See, State v. Artz, 154 Minn. 290, 191 N. W. 605; State v. Robinson, 262 Minn. 79, 114 N. W. (2d) 737, certiorari denied, 371 U. S. 815, 83 S. Ct. 26, 9 L. ed. (2d) 56; State v. Castle, 260 Minn. 293, 109 N. W. (2d) 593, certiorari denied, 368 U. S. 978, 82 S. Ct. 481, 7 L. ed. (2d) 439.

■ Defendant's contention that he was denied adequate representation turns on his claim that Freddie Goodthunder (the person from whom defendant claims he bought the watch) was not called as a witness. There is no showing made that Goodthunder was available or that his testimony, if obtained, would have been favorable to defendant. The assistant public defender of Hennepin County, acting as defendant's attorney, made this statement for the record at the close of the trial: "At the request of the defendant, he indicated to me three witnesses which he thought would be available in his defense, a Jeannie Goodthunder, a woman by the name of Bellcour, and Eugene McKay. I wrote letters to all three. I was unable to locate two. I did locate Mr. McKay, served him with a subpoena, interrogated him as to what he

knew about this, and he wrote me a short statement to the effect that he knew nothing about this, which I would like to place on file." This statement shows that the defendant's attorney was alert to his duty to secure favorable testimony. The fact that Freddie Goodthunder was not included in the quoted disclosure is significant. We believe defendant received adequate and conscientious representation.

■ Defendant's claim that he was denied due process and deprived of a fair trial has prompted consideration of a series of questions put to him by the prosecution calling for the name of the person with whom he was living at the time of the robbery. Giving full recognition to the rule that innuendoes undermining a defendant's character, even though disguised as questions, may violate his right to a fair trial, we are satisfied that in this case the interrogation was within proper limits. Police Detective Daniel D. Graff testified that defendant, in an effort to explain his ability to get along without steady work, had said he had obtained a $25 loan "from this woman that he had been living with." Inconsistent statements made by defendant as to the amount and source of the money found in his possession shortly after the robbery occurred, coupled with his denial of the statement attributed to him by Detective Graff, made the identify of the person with whom he was then living distinctly relevant. The inquiry was not prejudicial in a legal sense under these circumstances.

Affirmed.