**UNITED STATES of America,**
**Appellee,**

v.

**Estelle O. NASH, Appellant.**

**No. 15127.**

United States Court of Appeals,
Fourth Circuit.

Argued April 5, 1971.

Decided Sept. 7, 1971.

Winter, Circuit Judge, concurred specially and filed opinion.

Stanley E. Sacks, Norfolk, Va. (Filmore E. Rose, and Sacks, Sacks & Tavss, Norfolk, Va., on the brief), for appellant.

Roger T. Williams, Asst. U. S. Atty. (Brian P. Gettings, U. S. Atty., on the brief), for appellee.

Before BRYAN, WINTER and BUTZNER, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

A conviction of perjury, 18 U.S.C. § 1621, founded on testimony given by her in a prior criminal trial of her for a postal violation impels this appeal by Estelle O. Nash. Her grievance is that the proof in the second trial but repeated the proof in the first trial, where she was acquitted, in respect to the asserted falsity; that in actuality it was a retrial after her acquittal, and thus abrogated the double jeopardy protection of the Fifth Amendment. We see merit in her claim.

In December, 1968, an indictment was returned against Estelle O. Nash in the Federal District Court for Eastern Virginia charging that on or about October 23, 1968, at Norfolk, she did "steal from the mails a certain letter addressed to Mr. E. L. Johnson, Tour No. 2, G.P.O., Norfolk, Va. 23510", in violation of 18 U.S.C. § 1708. On the day of the offense she was an employee in the Norfolk Post Office. "Tour No. 2" refers to the employees' mail box there.

At her trial on January 27, 1969, postal inspectors testified that they had placed in the box an envelope containing three 25-cent pieces affixed to a piece of cardboard, two dollar bills and a letter, all marked. A fluorescent powder had been sprinkled on the bills and cardboard. They further stated that from a hidden observation station they saw her take the envelope from the mail box. Immediately they followed her into the ladies' rest area and upon a search of her person discovered the marked quarters. At trial the defendant testified that she had not taken the letter, having procured the three quarters from a dollar-changing machine. The jury acquitted her of the mail theft charge.

In November, 1969, Estelle O. Nash was indicted for perjury in the mail theft trial. The indictment alleges "that it was material to the aforesaid trial for the jury to determine the source from which ESTELLE O. NASH obtained three 25-cent pieces found in her possession on October 23, 1968." The false testimony, according to the indictment, was in these words:

\*   \*   \*   \*   \*   \*

"A. Then I left out of there. I went to the swing room. I went to my

locker. I got a dollar, and it was—I think one lady was in there at that time.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. All right. After you went into the swing room and went to your locker, where did you go?

"A. I left out. I went to the change machine.

"Q. All right.

"A. I got change for a dollar, which was four quarters.

"Q. All right.

"A. I went to the coffee machine. I got a cup of coffee.

"Q. Is it an automatic machine—a coin machine?

"A. Yes, sir. I got fifteen cent change.

"Q. All right. Go ahead.

"A. Then I went back to my locker, threw the change in my pocketbook.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. Did you have any one-dollar bills with you at any time?

"A. One.

"Q. All right. What had you done with that one-dollar bill?

"A. Put it in the change machine.

&ast;    &ast;    &ast;    &ast;    &ast;    &ast;

"Q. I show you Government's Exhibit Number 7. Is that the coin machine that you put the dollar in and got the coins out of?

"A. Yes; it is.

"Q. It is. And I take it at that time you had no quarters at all?

"A. No.

"Q. How long were you in the ladies' room?

"A. The first time I was in there one minute; long enough to open my billfold—open my locker, open my pocketbook, get out my billfold and get one dollar to get some change.

"Q. All right. And then what did you do?

"A. Went to the change machine.

"Q. All right. And then what did you do?

"A. Got four quarters. I put one quarter in the coffee machine, got a cup of coffee, went back in the ladies' room, threw the change in my purse, talked to Mrs. Bachellor about a minute or two, two minutes, and came out."

At the second trial, the prosecution contended that the evidence demonstrates that she could not possibly have received the 25-cent pieces from the change machine. The interval between the time when the inspectors saw her remove the test envelope and the time she was searched did not allow her the opportunity to obtain the marked quarters as change from the machine. Further, the Government introduced evidence that the marked quarters she claims to have received from the machine could not have been quarters deposited for change, because the latter cannot be recycled by the machine into change for dollars. The jury returned a verdict of guilty.

The Government concedes that her testimony concerning the three quarters was highly material, but emphasizes that the procurement or possession of the coins was not an element of the mail offense. Hence, argues the Government, it was neither the offense charged nor an issue litigated at the first trial, but was only an issue in the second case; consequently, the perjury prosecution was not a retrial of the Post Office crime. Nevertheless, in our judgment the appellant in the perjury trial was "subject for the same offense to be twice put in jeopardy", as interdicted by the Fifth Amendment.

■ ■ This conclusion is derived from formulae authoritatively prescribed *for ascertaining whether the verdict at the second trial depends upon resolution of any matter previously tested and found in favor of the defendant when acquitted at the first trial.* Double jeopardy is a constitutional bar not only to retrial for the same offense, but also to relitigation of adjudicated issues whether they emerge in trials for the same or distinct offenses. Cf. Ashe v. Swenson, 397 U.S.

436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 239, 92 L.Ed. 180 (1948), instructs that the determination "depends upon the facts adduced at each trial and the instructions under which the jury arrived at its verdict at the first trial". This distillation precipitates what "at each trial was crucial to the prosecution's case and which was *necessarily adjudicated* in the former trial". If it is identical the Government is estopped by the prior determination from proceeding with the second prosecution.

In confirming and enlarging on the point, Ashe v. Swenson, supra, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) held that the double jeopardy clause embodies the rule of collateral estoppel, elaborating in this way:

"'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. * * *" at 443, 90 S.Ct. at 1194.

"* * * Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' Sealfon v. United States, 332 U.S. 575, 579, 68 S.Ct. 237, 240, 92 L.Ed. 180. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based

upon a general verdict of acquittal." at 444, 90 S.Ct. at 1194.

Following the prescriptions in *Sealfon* and *Ashe*, we conclude that the jury in the first case undoubtedly passed upon the believability of Estelle Nash's statements made under oath. The jury may have been in error, but certainly it appraised the defendant's credibility. It is inconceivable that there would have been an acquittal if the jury had not accorded truth to her testimony.

■ Of course, the Government did not have to prove that she had *not obtained* the coins as she explained, but it did have the burden of establishing that she had taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had *not come* from the mail box, still when her story was adduced, it created a conflict with the Government's proof. There were but two conflicting explanations of her possession to be considered. Thus, the jury "necessarily" had to pass upon the truthfulness of her account. The issue was "crucial" and once adjudicated, its redetermination in a trial for another offense is estopped.

On this appeal the Government relies upon Adams v. United States, 287 F.2d 701 (5 Cir. 1961). In its reasoning the opinion completely conforms to our views. The issue was whether or not the defendant had testified falsely in his trial for possession and transportation of illicit whiskey when in his defense he offered an alibi, asserting that he was far from the locus delicti at the time of the crime. That he was not at the distant point when the crime was committed was the gist of the subsequent perjury charge. The Court held that the second trial was not barred by the doctrine of res judicata. The basis of the holding was that the first trial did not "necessarily adjudicate" the whereabouts of the defendant. Applying the same test, we

find that the issue of whether Estelle Nash obtained the quarters from the change machine was "necessarily" resolved by the jury which acquitted her of the substantive offense of mail theft. Hence, on the reasoning of *Adams*, reconsideration of the veracity of her testimony at a perjury trial is estopped.

The Government also relies upon United States v. Williams, 341 U.S. 58, 71 S.Ct. 595, 95 L.Ed. 747 (1951). One appellee, a police officer, had been convicted of beating prisoners in violation of the Civil Rights Act, 18 U.S.C. § 242, and the other three appellees, also police officers, had been found not guilty, as aiders and abettors. The convicted officer was indicted for perjury in testifying that he had not beaten the prisoners, and the remaining three were charged with perjury for testifying that they had not seen their principal beat the prisoners. The trial court dismissed the indictments on the ground of former jeopardy. On appeal, the plea of res judicata by the appellee abettors was denied because the subsequent accusations of perjury did not require adjudication of issues resolved at the earlier trials. However, the Court pointed out that even though the crimes were different, the bar of res judicata could still be raised if the previous and later cases involved the same determinative *issue*. On this head the Court said:

> "II. *Res Judicata.*—Though former jeopardy by trial for the substantive crimes is not available as a defense against this perjury indictment, it could be that acquittal on the substantive charges would operate 'to conclude those *matters in issue* which the verdict determined *though the offenses be different.*' Sealfon v. United States, 332 U.S. 575, 578." 341 U.S. at 63, 71 S.Ct. at 598. (Accent added.)

Thus *Williams* reaffirmed the directions of Sealfon v. United States, supra, 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180, which we have followed, for ascertaining whether the prior trial was res judicata

for purposes of the second. Determinative is the presence or absence of a common "core" in the two prosecutions. As heretofore stated, we see an identical issue although we recognize the distinctness of the charges of mail theft and perjury. At this point the admonition of *Sealfon*, supra, is notable:

> " * * * res judicata may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings and operates to conclude those *matters in issue which the verdict determined though the offenses be different*", at 578, 68 S.Ct. at 239. (Citations omitted and accent added.)

The decision of the District Court must be vacated and the case remanded for entry of a judgment of acquittal.

Vacated and remanded for final judgment.

WINTER, Circuit Judge (concurring specially):

I agree that the conviction should not be sustained but for reasons different from those stated by my copanelists. My views of the case follow:

Sealfon v. United States, 332 U.S. 578, 68 S.Ct. 237, 92 L.Ed. 180 (1948), held, on the facts of that case, that the defendant's acquittal of conspiracy to defraud the United States was *res judicata* of a subsequent prosecution for the substantive offense, although it recognized that ordinarily one may be prosecuted for both crimes. *Sealfon* prescribed a factual test to determine in any particular case which rule to apply. 332 U.S. at 579, 68 S.Ct. 237. And Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), held that the double jeopardy claim embodies the rule of collateral estoppel that "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194. Because the majority concludes that, on the facts here, "the jury 'necessarily' had to pass upon the truthfulness of her [defendant's] ac-

count," the majority concludes that the government is forever foreclosed from prosecuting her for perjury.

To such a broad proposition, I cannot assent. In almost every criminal prosecution resulting in acquittal where the defendant has testified, it may be said that the jury passed on the defendant's credibility and found him truthful. Yet we should not encourage prevarication by saying that necessarily such a defendant is immune from prosecution for perjury.

*Ashe* tells us that the doctrine of collateral estoppel as an aspect of double jeopardy is to be applied "with realism and rationality." 397 U.S. at 444, 90 S. Ct. 1189. Rather than to apply *Sealfon* and *Ashe* by rote, i. e., whether defendant's credibility was litigated at the first trial, I would prefer the rule that an earlier determination of credibility will not foreclose prosecution for perjury under the double jeopardy clause and the included collateral estoppel doctrine if, at the trial for the latter, the government produces new and additional evidence that defendant lied under oath at his first trial sufficient to permit the trier of fact to conclude beyond a reasonable doubt that perjury had been committed. At least by dictum, this has been the rule in this circuit for almost sixty years. Allen v. United States, 194 F. 664, 667 (4 Cir. 1912). See also, Note, Perjury by Defendants: The Uses of Double Jeopardy and Collateral Estoppel, 74 Harv.L.Rev. 752, 763 (1961), which expresses approbation of this rule as a proper balance between the deterrent effect of prosecution for perjury and the policy considerations embodied in the double jeopardy clause.

In this case, we obtained transcripts of both trials after argument. My comparison of them discloses that, at the trial for perjury, the evidence was a mere rehash of the evidence adduced at the first trial. The principal item of difference urged by the government in this appeal, i. e., proof that it was mechanically impossible for the change machine, from which defendant testified that she obtained the marked quarters as change

for a dollar bill that was rightfully hers, to have dispensed the marked quarters even if another person inserted them in the machine for coins of smaller denomination, was in fact in evidence at the first trial. It is true that, at the perjury trial, the government sought to bolster this aspect of its case by offering a corroborating witness. But his testimony was not new or different; it was merely cumulative. Because of the identity of the evidence at both trials—but *only* for this reason—I conclude that the second trial was barred by the double jeopardy clause.