STATE of Wisconsin, Plaintiff-Appellant,†

v.

Philip M. CANON, Defendant-Respondent.

Court of Appeals

*No. 98–3519–CR. Submitted on briefs September 1, 1999.—Decided September 21, 1999.*

(Also reported in 602 N.W.2d 316.)

†Petition to review granted.

512

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *James E. Doyle*, attorney

general, and *William L. Gansner*, assistant attorney general.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Alan D. Eisenberg* of *Law Offices of Alan D. Eisenberg* of Milwaukee.

Before Cane, C.J., Hoover, P.J., and Gordon Myse, Reserve Judge.

MYSE, R.J.   The State of Wisconsin appeals an order dismissing a perjury charge against Phillip M. Canon relating to Canon's testimony in a previous trial prosecuting him for driving under the influence, for driving with a prohibited blood alcohol concentration, sixth offense, and operating after revocation, third offense. At trial, Canon had admitted drinking the day in question but testified that he had not been driving his pickup truck and that his friend was the driver. This was Canon's only defense.

A jury acquitted Cannon on all charges. However, subsequent evidence indicated that Canon had lied in denying that he was the driver. Consequently, the State charged Canon with perjury. To succeed in prosecuting Canon for perjury, the State must prove that Canon drove the car during the time giving rise to the traffic charges. Because a jury has already determined there was insufficient proof Canon was driving, we conclude that issue preclusion, embodied in the constitutional guarantees against double jeopardy contained in both the federal and state constitutions, pursuant to *Ashe v. Swenson*, 397 U.S. 436, 445 (1970), precludes relitigating this factual issue. Furthermore, we conclude that an issue of ultimate fact cannot be relitigated even when the judgment was obtained by

the defendant's false testimony. Accordingly, we affirm the judgment dismissing the perjury charge.

The facts are undisputed for purposes of this appeal. On July 4, 1996, Canon and a companion, Carey Pergande, were traveling through Taylor County in Canon's pickup truck when they stopped at the roadside to urinate. While they were stopped, a Taylor County police officer approached and inquired whether the two were having any problems with their vehicle. From the officer's observations and conversation with the two men, the officer determined that Canon was intoxicated and was the driver of his pickup truck. Although Canon told the officer that Pergande was the driver, the officer arrested Canon.

Pergande gave a written statement to the police to the effect that it was Canon who was driving the pickup truck. Pergande was subpoenaed for trial but he did not appear and the court refused to admit his written statement because it was hearsay. At trial Canon admitted drinking and did not contest that his driver's license was revoked; the single issue, therefore, was whether he was the driver at the time in question. Canon testified on his own behalf and asserted under oath that he was not driving his pickup truck on the day in question but that Pergande was the driver. The jury subsequently acquitted Canon of all charges.

Within a month of trial, a friend of Pergande, Antonio Que Sada, informed Taylor County authorities that Canon had admitted that he had lied in denying that he was the driver. Partially based on this supporting evidence, Canon was charged with perjury. The circuit court concluded that the issue of who was driving the truck was decided by the jury's verdict in the initial trial. Because the jury determined there was insufficient proof that Canon was driving, the circuit

court found the State was barred by the doctrine of issue preclusion from relitigating this issue.

We must determine whether the prosecution for perjury following the defendant's acquittal of the three driving-related charges violates the principles of issue preclusion embodied in the double jeopardy clauses of the federal and Wisconsin constitutions. Whether an individual's constitutional right to be free from double jeopardy has been violated is a question of law that this court reviews de novo. *See State v. Anderson*, 219 Wis. 2d 739, 758, 580 N.W.2d 329, 332 (1998). The double jeopardy clauses of the federal and state constitutions are the same in scope and purpose. *See id.* at 746 n.7, 580 N.W.2d at 332 n.7 (citing *Day v. State*, 76 Wis. 2d 588, 591, 251 N.W.2d 811, 812–13 (1977)). Therefore, this court accepts decisions of the United States Supreme Court as controlling the double jeopardy provisions of both constitutions. *See id.*

The federal and state double jeopardy clauses have been construed to encompass three separate constitutional protections: (1) protection against a subsequent prosecution for the same offense after acquittal; (2) protection against a subsequent prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *See United States v. Dixon*, 509 U.S. 688, 696 (1993); *State v. Vassos*, 218 Wis. 2d 330, 341, 579 N.W.2d 35, 40 (1998).

The seminal case concluding that the federal double jeopardy clause includes the doctrine of collateral estoppel is *Ashe v. Swenson*, 397 U.S. 436, 445 (1970). In *Ashe*, the Court held that collateral estoppel barred the government from prosecuting Ashe for the

robbery of a second member of a group of card players after a jury had previously acquitted him of robbing a different member of the group. *See id.* at 445–47. The only issue the jury faced at the defendant's initial trial was whether Ashe was one of the robbers. On appeal, the Supreme Court held that, by acquitting him, the jury had necessarily found that there was insufficient evidence that Ashe was one of the robbers. *See id.* at 446. This was an ultimate issue of fact and, because the jury had previously considered it, the state could not relitigate by simply changing the name of the victim. *See id.*

Under collateral estoppel, therefore, an issue of ultimate fact determined by a valid and full judgment cannot again be litigated between the same parties in a subsequent lawsuit. *See id.* at 443. When there has been a previous judgment of acquittal based upon a general verdict, the circuit court in a subsequent prosecution must "examine the record of a prior proceeding, taking into account the pleadings, the evidence, charge, and other relevant matter, and conclude *whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.*" *See id.* at 444 (quotation omitted) (emphasis added).

In Wisconsin, collateral estoppel is also called "issue preclusion." *See Jensen v. Milwaukee Mut. Ins. Co.*, 204 Wis. 2d 231, 235, 554 N.W.2d 232, 234 (Ct. App. 1996). We must determine whether the doctrine of issue preclusion prevents the state from relitigating the factual issue of whether Canon was driving his truck. The burden is on Canon to demonstrate that this issue was actually decided in the first proceeding. *See Vassos*, 218 Wis. 2d at 343, 579 N.W.2d at 40 (citing *Dowling v. United States*, 493 U.S. 342, 350 (1990)).

517

Moreover, our supreme court cautioned that the "*Ashe* collateral estoppel defense is not often available to an accused, for it is difficult to determine, especially in a general verdict of acquittal, how the fact finder in the first trial decided any particular issue." *Id.* at 344, 579 N.W.2d at 41 (citing 2 WAYNE R. LAFAVE AND JEROLD H. ISRAEL, CRIMINAL PROCEDURE, § 17.4, at 382 (1984); *United States v. Brackett*, 113 F.3d 1396, 1399 (5th Cir. 1997)).

The State concedes that the jury "presumably" was not convinced that Canon was driving.[1] However, the State argues that at the trial for perjury it "will not seek to prove that Canon was the driver, but instead, that he lied when he testified that he was not [driving]." This, however, is a distinction without a difference in the context of issue preclusion. The State's argument focuses on the technically different elements involved between perjury and the driving offenses charged in the original trial. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932). The matching elements analysis of *Blockburger* does not apply to a collateral estoppel claim because it is the issue and not the charged offense that determines the result.

---

[1] The State also argues that because the entire trial transcript was not included in the appeal, it is possible that the jury based its verdict on an issue other than whether Canon was driving the day in question. However, if this court were to decide that the jury may have disbelieved substantial and uncontradicted evidence of the prosecution on points that Canon did not contest, namely that he was intoxicated and that his license was revoked, it would simply amount to a rejection of issue preclusion in any criminal case where a general verdict form was used; this is contrary to *Ashe. See Ashe v. Swenson*, 397 U.S. at 444 n.9 (1970).

In conducting our analysis under issue preclusion, the United States Supreme Court has instructed that the test "is not to be applied with [a] hypertechnical and archaic approach . . . but with realism and rationality. . . ." *Ashe*, 397 U.S. at 444. "The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' " *Id.* (quoting *Sealfon v. United States*, 332 U.S. 575, 579 (1948)). At the jury trial, Canon admitted drinking alcohol and did not contest that his driving privileges were revoked. Canon's defense was relatively simple and was disclosed when his attorney informed the court that the only issue for the jury was who was driving Canon's car on that day. We consider this defense to be relevant in determining what factual issues were necessarily determined by the jury's verdict of acquittal.

Furthermore, the State's argument fails to offer any explanation as to how it proposes to prove that Canon was lying when he testified without relitigating the ultimate factual issue of whether Canon was in fact driving on the day in question. The absence of this explanation is not coincidental. It is absent because a jury would necessarily have to find that Canon was driving his truck on the day in question for it to find that Canon was guilty of perjury. However, we conclude that this ultimate issue of fact was previously litigated and decided adversely to the State.

No rational jury could have grounded its verdict upon a reason other than that the State failed to prove Canon was driving on the day in question. Accordingly, we conclude that the doctrine of issue preclusion embodied in the double jeopardy clauses of the state and federal constitutions prevents the State from relitigating this issue.

The State further contends that even if issue preclusion would normally preclude relitigating a previously decided issue in a subsequent prosecution, a judgment does not carry its full preclusive weight when it was obtained by the fraud of the defendant. The State cites *People v. Barnes*, 49 Cal.Rptr. 470 (1966), and *State v. Noble*, 410 P.2d 489 (Ariz. 1966), as persuasive authority for such a rule.

Neither our supreme court nor the United States Supreme Court have directly addressed the issue as to whether a fraudulently obtained judgment retains its force under collateral estoppel. We initially confess an attraction for a narrowly tailored rule which would permit the relitigation of a judicially determined issue or claim, when that determination was obtained as a result of the fraudulent conduct of one of the parties and there is additional evidence not available in the first trial that would demonstrate that the determinations initially made were incorrect. Such a rule would protect the integrity of the judicial process and foster society's search for truth and justice. However, we note that both cases the State cites as persuasive authority for this proposition were decided before the Supreme Court's decision in *Ashe* and therefore did not fully consider the constitutional status of issue preclusion. After our analysis of that doctrine and its progeny, we conclude that the State's proposed exception must be rejected.

We consider the opinion of federal circuit courts as persuasive authority in interpreting the constitutional issue of collateral estoppel and issue preclusion. For the purposes of our analysis, the federal circuits are in agreement that once an issue has been actually litigated and decided, relitigation of the decided issue is

barred even if the judgment was obtained by the defendant's perjured testimony.

The Ninth Circuit considered the government's attempt to relitigate a decided issue by charging the defendant with perjury in *United States v. Hernandez*, 572 F.2d 218 (9th Cir. 1978). In *Hernandez*, the defendant was originally charged with overbilling the United States Department of Commerce. After the district court acquitted Hernandez of these charges, the government charged him with perjury for the testimony he gave at the first trial. After a jury convicted Hernandez of perjury, he argued on appeal that the second trial was barred by the issue preclusion doctrine encompassed in the Fifth Amendment guarantee against double jeopardy, pursuant to *Ashe*. *See id.*

The Ninth Circuit agreed with Hernandez and, in reversing the conviction, concluded that in the first trial the court " 'necessarily' had to pass upon the truthfulness of [Hernandez's theory of defense]." *Hernandez*, 572 F.2d at 222. *See also United States v. Stoddard*, 111 F.3d 1450 (9th Cir. 1997) (acquittal of marijuana conspiracy and possession charges, on theory that the government had not proven beyond a reasonable doubt that the cash used by alleged coconspirator to purchase drugs from an undercover officer belonged to the defendant, collaterally estopped the government from asserting defendant's ownership of this same cash to show that the defendant made false statements on his income tax returns).

Similarly, in *United States v. Nash*, 447 F.2d 1382 (4th Cir. 1971), the defendant was tried for mail theft. Postal inspectors testified that they had seen the defendant remove from a mail box an envelope in which the inspectors had placed three marked quarters. They followed Nash into the restroom and

discovered the marked quarters in her possession. She testified that she did not take the envelope from the mail box and that she only obtained the quarters from a dollar change machine. The jury acquitted her of the mail theft charge. Thereafter, the Government prosecuted her for perjury and established that she could not possibly have obtained the quarters from the change machine as she had testified in the first trial. After she was convicted of perjury, Nash appealed to the Fourth Circuit. Following *Ashe*, the Fourth Circuit held that her perjury trial was barred by double jeopardy. *See Nash*, 447 F.2d at 1385. The court concluded that there were only two conflicting explanations of her possession of the quarters for the jury to consider and that the jury had necessarily decided that ultimate factual issue in acquitting Nash. *See id.*

We recognize that the collateral estoppel rule applies only when the issue has necessarily and actually been determined in a previous litigation. When the previous litigation does not necessarily determine the issue in question, we will not precluded a subsequent perjury charge. *See, e.g., United States v. Haines*, 485 F.2d 564 (7th Cir. 1973) (defendant's subsequent perjury prosecution was not barred by issue preclusion regardless of his claim that acquittal on bank robbery charge constituted a prior determination of the truthfulness of his alibi testimony, where the jury could have discredited the defendant's alibi testimony and still concluded that the Government failed to prove his guilt); *United States v. Dipp*, 581 F.2d 1323 (9th Cir. 1978) (perjury prosecution was not barred by collateral estoppel because it was impossible to determine what element the jury found to be lacking of proof in previous judgment of acquittal).

Here, however, the jury in the initial trial necessarily concluded that the state failed to prove Canon was the driver because this was the only rational basis to acquit him. Therefore those cases where the issue has not been necessarily decided in previous litigation are inapposite.

We also glean support for rejecting a fraudulently obtained judgment exception to the Fifth Amendment from the Wisconsin Supreme Court's language remanding the case in *Vassos*, 218 Wis. 2d at 344–45, 579 N.W.2d at 41. There, the court remanded the case to the trial court for a determination of whether the subsequent prosecution would necessarily require relitigation of an issue of ultimate fact already decided, a question the court was unable to answer in that case without the full trial record. *See id.* We consider it significant that our supreme court stated that upon the trial court's determination that the same issue was previously decided, the State would be precluded from subsequent prosecution without any exception noted. The court did not remand for a determination as to whether the defendant influenced the initial trial result with false testimony.

Based on the overwhelming federal circuit authority and our own supreme court's interpretation of *Ashe*, we conclude that an issue of ultimate fact cannot be relitigated where that issue has been necessarily litigated without regard to whether the judgment was influenced by the defendant's false testimony. We therefore conclude that the circuit court correctly dismissed the charge of perjury because the issue as to whether Canon was the driver of the car had already been judicially determined and may not be relitigated in a subsequent criminal proceeding.

By the Court.—Order affirmed.

CANE, C.J. *(dissenting)*. I respectfully dissent from the majority's conclusion that the State is barred under the principle of double jeopardy from prosecuting Canon for perjury. Canon relies on "collateral estoppel" as the basis for barring the perjury prosecution. The jurisdictions are divided on this question and the various opinions range from applying the majority's rationale in this case to outright rejection of this principle as applied to perjury prosecutions. *See* 21 AM. JUR. 2D *Criminal Law* § 438 (1998).

Canon argued and the majority agreed that the controlling case in this area is *Ashe v. Swenson*, 397 U.S. 436 (1970), in which the Supreme Court held that the doctrine of collateral estoppel was embodied in the Fifth Amendment guarantee against double jeopardy. We must keep in mind, however, that in *Ashe*, the Supreme Court was concerned only with properly protecting defendants from multiple prosecutions for crimes arising out of a single criminal transaction. In other words, the criminal episode was single and since the defendant had been adjudicated not a party to the robbery at the first trial, he could not be subjected to a contrary verdict at another trial involving the same incident. *See id.* at 446.

The Court was not addressing a separate criminal episode such as perjury committed at the trial of the first offense. Rather, the Court applied the collateral estoppel principle to a defendant who had been acquitted of robbing one member of a group of six card players. There was no question that an armed robbery had occurred. *See id.* at 445. The only question at Ashe's first trial was whether he was one of the rob-

bers. By acquitting him at the first trial, the Supreme Court concluded that the jury had determined that Ashe was not one of the robbers and further concluded that a second trial was merely an opportunity for the State to relitigate the question of his status as a robber. *See id.* Essentially, the State's attempts to try Ashe for the armed robbery of another one of the six players at the same poker game was nothing more than a second attempt to prove Ashe guilty of the same crime. This concern was central to the Court's holding in *Ashe* when it stated:

> In this case the State in its brief has frankly conceded that following the petitioner's acquittal, it treated the first trial as no more than a dry run for the second prosecution: "No doubt the prosecutor felt the state had a provable case on the first charge and, when he lost, he did what every good attorney would do—he refined his presentation in light of the turn of events at the first trial."

*Id.* at 447.

The circumstances in Canon's case are far different. First, it is clear that the State is not attempting to rehash or refine the evidence used in the first trial in order to take a "second shot" at Canon. Rather, the State obtained new and additional evidence that was not previously available indicating that Canon testified falsely under oath at his trial on the traffic charges. Second, unlike the situation in *Ashe* where the Court prohibited the State from prosecuting Ashe a second time for the same criminal episode, Canon's alleged perjury is a separate crime occurring under different circumstances and at a different time. He is not being prosecuted for the same criminal act.

I can appreciate the dilemma whether to apply the doctrine of collateral estoppel when a defendant has

allegedly perjured himself at a trial that ultimately resulted in his acquittal. On one hand, there is a concern that allowing an acquittal to insulate the defendant from perjury will give a defendant license to testify falsely, with a resulting detriment to the reliability of the evidence and the justice system. On the other hand, there is an apprehension that allowing a prosecution for perjury will give the State a "second shot" at the defendant for the same wrong, or allow an overzealous prosecutor to use the perjury trial to retry issues already determined in the defendant's favor.

However, when applying the prohibition against double jeopardy, the emphasis should be on underlying policies rather than technicalities. The primary considerations should be fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.

I believe very strongly that we cannot have justice in our court system unless we can be assured that a jury's findings are based upon truthful testimony. Any rule that tends to encourage the giving of false testimony threatens the very core of the reasons for the existence of our judicial system, namely the peaceable and commendable settlement of controversies by the courts. A proposition that allows persons to escape punishment for perjury because they succeeded in inducing a jury to accept their false testimony is unreasonable. If it were so, then it follows that our laws would encourage persons such as defendants in criminal cases to perjure themselves. It is essential to the fabric and integrity of our judicial process that court proceedings and judgments be free from fraud, and that litigants and witnesses be encouraged to tell the truth and be punished if they do not. The very founda-

tion of any judicial proceeding is that our decisions rest upon truthful testimony.

In Wisconsin, we have recognized that a proceeding based upon fraud does not bar a second prosecution of a defendant for the same offense. In *State v. Reid*, 166 Wis. 2d 139, 479 N.W.2d 572 (Ct. App. 1991), the trial court declared a mistrial because of a defense witness's perjury. We held that his retrial was not barred by double jeopardy and observed that the right to have a trial continued to judgment must sometimes be subordinated to the public's interest in fair trials designed to end in just judgments. Importantly, we emphasized that the public's interest in fair trials and just judgments will not tolerate nor allow a defendant to benefit from defrauding the court. *Id.* at 147, 479 N.W.2d at 575.

Here, it is clear that the ultimate issues of fact involved in the two proceedings (traffic violations versus perjury) are entirely different. Apart from this fact, equity and justice require that we insist upon honest testimony under oath in our judicial proceedings. To accept Canon's argument would be to allow the concept of collateral estoppel, which is designed to protect an accused from prosecutorial harassment, to be used as a shield to insulate a defendant from his own wrongdoing in fraudulently obtaining a favorable result in a criminal case. It is much better to preserve the sanction against perjury, which is always wrong and unacceptable in the judicial system, than to be moved by the mere opportunity for abuse by a renegade prosecutor.

I would conclude that the Fifth Amendment prohibition against putting a person in jeopardy twice "for the same offense" does not apply where the "offenses" involved are different and arise out of separate criminal episodes. Canon is charged with a separate

criminal episode of perjury and not with the traffic violations for which he was acquitted. The ultimate fact issue at this trial is whether he lied under oath at his former trial, not whether he committed the traffic violations.

Additionally, even where as here a defendant's testimony relates to the main facts at issue and his conviction for perjury would necessarily import a contradiction of the not guilty verdict of the former charge, I would conclude that as a matter of public policy the former acquittal is no bar to prosecution for perjury committed at the former trial. Where the State has new and additional evidence not previously available to it indicating that Canon testified falsely under oath during his trial, the perjury trial may not be characterized as a "second shot" at the defendant or a disgruntled prosecutor's attempt to retry the case under the guise of a perjury prosecution.

To apply collateral estoppel to these facts serves to immunize Canon from the separate and independent crime of perjury and reward his falsehood. Thus, the doctrine of collateral estoppel should not be available to a defendant in a prosecution for perjury. Accordingly, I would reverse the order dismissing the perjury charge and remand the matter for trial.