529 S.E.2d 803

**Steven Christopher SEVACHKO**

v.

**COMMONWEALTH of Virginia.**

Record No. 2513–98–2.

Court of Appeals of Virginia,
Salem.

June 13, 2000.

Edmund R. Michie, Charlottesville, for appellant.

Kathleen B. Martin, Assistant Attorney General (Mark L. Earley, Attorney General, on brief), for appellee.

Present: COLEMAN, ANNUNZIATA and BUMGARDNER, JJ.

BUMGARDNER, Judge.

A jury convicted Steven Christopher Sevachko of perjury in violation of Code § 18.2–434. The defendant argues the doctrine of collateral estoppel precluded the prosecution. We find that the sole issue of fact, whether the defendant drove on December 24, 1995, was previously decided adversely to the Commonwealth, and we reverse this conviction.

The defendant was first charged with driving on a suspended license. At that trial, he testified that he was not driving, and a jury acquitted him. After the acquittal, the Commonwealth learned that the defendant told his first attorney that he was driving. The Commonwealth indicted him for committing perjury at the first trial.

*Slayton v. Commonwealth,* 185 Va. 371, 382, 38 S.E.2d 485, 491 (1946), addressed this precise issue in a case dealing with the identical issue of fact: was the defendant driving? The Court held that an acquittal does not bar subsequent prosecution for perjury at the trial. Subsequently, the United States Supreme Court ruled in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), that the guarantee against double jeopardy encompassed collateral estoppel and the Fourteenth Amendment made the doctrine applicable to the states. The Supreme Court of Virginia has

stated, "the doctrine of collateral estoppel is a Constitutional requirement embodied in the fifth amendment right against double jeopardy and is applicable to the states through the fourteenth amendment to the United States Constitution." *Simon v. Commonwealth,* 220 Va. 412, 415, 258 S.E.2d 567, 569 (1979).

The doctrine of collateral estoppel "means 'that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' " *Rogers v. Commonwealth,* 5 Va.App. 337, 341, 362 S.E.2d 752, 754 (1987) (quoting *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194). "The party seeking the protection of collateral estoppel carries the burden of showing that the verdict in the prior action necessarily decided the precise issue he seeks to now preclude." *Id.* (citation omitted).

Where a "previous judgment of acquittal was based upon a general verdict . . . a court [must] 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to fore-close from consideration.' " *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194 (citation omitted). *See United States v. Nash,* 447 F.2d 1382 (4th Cir.1971) (when mail fraud acquittal is based on a general verdict, issue is whether rational jury could have grounded its verdict upon a collateral issue; court found that because there were two conflicting explanations as to defen-dant's possession of money, the jury's determination was not collateral but crucial and collateral estoppel barred redetermi-nation).

At the first trial of this defendant, the Commonwealth had only two issues to prove: the defendant drove; his license was suspended. *See* Code § 46.2–351. The defendant conceded his license was suspended, and at the perjury trial the Common-wealth conceded the sole issue of fact had been whether the defendant drove on December 24, 1995. The jury determined

that he did not drive when it acquitted. We hold that the doctrine of collateral estoppel precluded the perjury prosecution under the decision in *Ashe* because the Commonwealth would have to prove the identical issue.

Accordingly, we reverse the conviction, and dismiss the case.

*Reversed and dismissed.*

ANNUNZIATA, Judge, concurring.

I concur in the majority decision but write separately to underscore the factual predicate of the decision and to make clear the limits of our holding. As noted by the majority opinion, the United States Supreme Court in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), held that the principle of collateral estoppel is embodied in the double jeopardy protections afforded under the Fifth Amendment of the United States Constitution. *See also Simon v. Commonwealth,* 220 Va. 412, 258 S.E.2d 567 (1979). Its application in our adversary system of justice "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe,* 397 U.S. at 443, 90 S.Ct. at 1194.

For collateral estoppel to apply, the following factors must be established:

the court must decide (1) whether the issue in question is identical to the previous issue, (2) whether it was actually determined in the prior adjudication, (3) whether it was necessarily decided in that proceeding, (4) whether the resulting judgment settling the issue was final and valid, and (5) whether the parties had a full and fair opportunity to litigate the issue in the prior proceeding.

*United States v. Fiel,* 35 F.3d 997, 1006 (4th Cir.1994) (citation omitted), *cert. denied,* 513 U.S. 1177, 115 S.Ct. 1160, 130 L.Ed.2d 1116 (1995).

Guided by this principle, we hold today that under the decision in *Ashe,* the perjury prosecution is precluded by the

doctrine of collateral estoppel. However, barment of a subsequent perjury prosecution does not necessarily follow as a matter of law from an acquittal of a charge in which false testimony has been given. *See United States v. Nash,* 447 F.2d 1382, 1385 (4th Cir.1971). Prosecution for perjury subsequent to an acquittal on the charge will be precluded only when it cannot be said that "a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe,* 397 U.S. at 444, 90 S.Ct. at 1194. In other words, collateral estoppel will bar a subsequent prosecution "when the issue adjudicated in the first proceeding is ... dispositive of an element of the crime tried in the second proceeding." *Simon,* 220 Va. at 416, 258 S.E.2d at 570; *see Lee v. Commonwealth,* 219 Va. 1108, 1111, 254 S.E.2d 126, 127 (1979).

Because the verdicts in criminal cases customarily are general, it is imperative that, consistent with the *Ashe* test, the reviewing court make a thorough analysis of the record of the prior proceeding to identify the issues foreclosed. *See Nash,* 447 F.2d at 1385; *see also Simon,* 220 Va. at 418, 258 S.E.2d at 571 (in determining which issues have necessarily been decided by an acquittal in a prior trial, the appellate court must examine the record of the prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter). The requirement to do so serves two critical elements of our system of justice, of equal but competing value: 1) the need to protect and preserve the integrity of the fact finding process; [1] and 2) the guarantee that multiple prosecu-

---

1. As noted by the United States Court of Appeals for the Fifth Circuit:
   [A]llowing an acquittal to afford any sort of insulation for perjury will be giving defendants an uncontrollable license to testify falsely. The resulting detriment to the reliability of evidence and more so, to the stability of the judicial process, would only be enhanced by the obvious fact that the more persuasively flagrant the defendant's fabrication, the greater his chances of total exoneration. This completes a vicious circle since the successful acquittal on the substantive offense would immunize him as to the very falsehoods which brought it about.
   *Adams v. United States,* 287 F.2d 701, 703 (5th Cir.1961).

tions for the same offense are prohibited.[2]

To serve these dichotomous goals, the reviewing court must neither read the record too broadly and prohibit prosecution for perjury where it is warranted, *see, e.g., United States v. Carter,* 60 F.3d 1532 (11th Cir.1995); *Adams v. United States,* 287 F.2d 701 (5th Cir.1961), nor read the record too restrictively and compel the accused, in the words of *Ashe,* to " 'run the gantlet' " twice in violation of the Double Jeopardy Clause of the United States Constitution. *Ashe,* 397 U.S. at 446, 90 S.Ct. at 1195 (quoting *Green v. United States,* 355 U.S. 184, 190, 78 S.Ct. 221, 225, 2 L.Ed.2d 199 (1957)).

Reviewing the record with the scrutiny required by *Ashe,* it is manifest that the jury in the first trial necessarily credited the defendant's account of events. *See Nash,* 447 F.2d at 1385 (determining that "[i]t is inconceivable that there would have been an acquittal [in the first trial] if the jury had not accorded truth to [the defendant's] testimony"). Simply stated, the jury necessarily determined defendant's credibility in his favor in order to acquit him of the charge. As conceded by the Commonwealth in the course of the perjury prosecution, the record establishes unequivocally that the sole issue in the prior trial was whether the defendant was driving on the date in question. Sevachko stated under oath in the earlier trial that "he was not driving, that in fact the car was being repaired, that it was at a service shop on Emmet Street and he didn't get it back until after—this was the 24th of December." Sevachko's testimony squarely conflicted with the Commonwealth's proof to the contrary. Because his testimony on the sole issue in contention, and its credibility, were crucial to the determination of guilt in the prior case, the jury necessarily determined the credibility of his account in reaching its verdict of acquittal. Sevachko's credibility was therefore the

---

**2.** A failure to accurately identify the issue to be foreclosed in a subsequent perjury trial would permit the prosecutor "[to treat] 'the first trial as no more than a dry run for the second prosecution,' and [to] 'refine[ ] his presentation in light of the turn of events at the first trial.' " *Simon,* 220 Va. at 417, 258 S.E.2d at 571 (quoting *Ashe,* 397 U.S. at 447, 90 S.Ct. at 1196).

"dispositive element" in both prosecutions. *See Simon*, 220 Va. at 416, 258 S.E.2d at 570; *Lee*, 219 Va. at 1111, 254 S.E.2d at 127. The record evinces no other predicate for the verdict.[3] *See Nash*, 447 F.2d at 1385; *United States v. Robinson*, 418 F.Supp. 121 (D.Md.1976) (where prosecution attempted to premise its case in the former prosecution on its claim that defendant lied about the crucial facts of the case, prosecution for perjury based on that testimony is barred); *see also Wheatley v. United States*, 286 F.2d 519 (10th Cir.1961) (perjury prosecution barred where defendant's testimony in prior trial that he had not received money for illegal liquor sales was crucial to his acquittal); *Ehrlich v. United States*, 145 F.2d 693 (5th Cir.1944) (perjury prosecution barred where defendant's testimony in prior trial denying the illegal act alleged was determinative of the issue); *United States v. Barnes*, 386 F.Supp. 162 (E.D.Tenn.1973) (because rational jury could not have acquitted defendant in prior trial of working in illegal distillery without accepting as true his testimony that he did not work there, subsequent perjury prosecution for falsity of that testimony was barred); *United States v. Drevetzki*, 338 F.Supp. 403 (N.D.Ill.1972) (where rational jurors could not have acquitted defendant of theft at prior trial without believing his testimony, perjury prosecution based on falsity of that testimony was collaterally estopped); *Commonwealth v. Hude*, 492 Pa. 600, 425 A.2d 313 (1980) (where sole issue litigated in prior trial was witness' credibility, and the jury was forced to either accept the witness' testimony or acquit the defendant and it resolved the issue in

---

**3.** In *Nash,* the Fourth Circuit held that a prosecution of the defendant for perjury based on testimony in a trial for mail theft was barred under principles of collateral estoppel. The court reasoned that the jury necessarily passed upon the defendant's testimony upon which the perjury charge was based in acquitting him of that charge. In examining the record, the court found, as we have here, that there were only two possible but conflicting explanations in the former mail theft trial of the defendants' possession of the money, one of which was defendant's explanation. Finding that his explanation was not simply a "collateral issue, but ... crucial [to the adjudication of the charge] ... its redetermination in a trial for perjury was estopped." 447 F.2d at 1385.

favor of the defendant, prosecution for perjury is barred); *cf. Carter,* 60 F.3d 1532 (because jury in prior trial need not necessarily have concluded defendant worked with accomplices on only one occasion in order to acquit him, government was not collaterally estopped from prosecuting defendant on charge of perjury for his sworn statement that he had worked with accomplices only once); *Adams,* 287 F.2d 701 (defendant's prosecution for falsely testifying to alibi defense affirmed where jury in first trial need only have found that defendant was not present at crime scene, but not necessarily that he was at party defendant claimed to have attended on evening in question); *United States v. Haines,* 485 F.2d 564 (7th Cir.1973) (perjury prosecution not collaterally estopped where jury could have rejected defendant's alibi testimony in prior trial and still concluded that government had failed to prove defendant's participation in bank robbery); *State v. Hutchins,* 746 A.2d 447 (N.H.2000) (perjury prosecution not barred where defendant was acquitted of sexual assault in prior trial, but jury need not have accepted defendant's testimony that "nothing of a sexual nature" had occurred between defendant and victim); *People v. Briddle,* 84 Ill.App.3d 523, 40 Ill.Dec. 265, 405 N.E.2d 1357 (1980) (prosecution for perjury not barred where defendant's testimony in prior trial was irrelevant to the charges against him); *cf. also State v. DeSchepper,* 304 Minn. 399, 231 N.W.2d 294 (1975); *State v. McCue,* 122 N.J.Super. 171, 299 A.2d 744 (1973).

In short, Sevachko's prosecution for perjury is barred under the double jeopardy provisions of the Fifth and Fourteenth Amendments because it is clear that the jury in the prior proceeding necessarily determined his credibility on the only contested issue in the case, and Sevachko's credibility is the dispositive element in the subsequent prosecution for perjury.

COLEMAN, Judge, concurring, in part, and dissenting, in part.

I agree with the majority in reversing Sevachko's perjury conviction. I also agree that, in prosecuting the perjury charge, the Commonwealth is collaterally estopped from prov-

ing that Sevachko was driving on a suspended license because that fact was previously determined in Sevachko's favor in the earlier proceeding. However, in my view, the majority extends the holding in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), too far by completely barring the perjury prosecution. Accordingly, I dissent from that aspect of the opinion and write separately due to my concern that the majority's holding will be incorrectly interpreted by trial judges to bar meritorious perjury prosecutions.

Collateral estoppel is a doctrine of fact preclusion. As the Supreme Court stated in *Ashe*, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194. The doctrine does not operate, contrary to the majority holding, to preclude a party from proving the elements of a cause of action or offense by other evidence independent of the fact which the party is collaterally estopped from proving. *See Simon v. Commonwealth*, 220 Va. 412, 258 S.E.2d 567 (1979). Only where proof of the estopped fact is essential to proving an element of the newly charged offense or cause of action, as in *Ashe*, does the doctrine of collateral estoppel also preclude proof of an essential element of the other offense, thereby foreclosing a prosecution for the other offense. In *Ashe*, the state failed to prove, in the first of a series of prosecutions, that Ashe was the robber. Because proof of that fact was necessary and essential to prove the subsequent robberies, the Court held that the state was collaterally estopped from proving that element in the subsequent proceedings.

In *Simon*, the district court acquitted the defendant of driving under the influence based on a finding that the evidence failed to prove that he was intoxicated. In a subsequent prosecution for involuntary manslaughter, the Commonwealth sought to establish, as the predicate for the involuntary manslaughter offense, that the defendant was driving while intoxicated. The Virginia Supreme Court held that the Commonwealth was collaterally estopped from proving that the defendant was legally intoxi-

cated. However, the Court remanded the case and held that the Commonwealth was not precluded from prosecuting the defendant for involuntary manslaughter based on proof of other wrongful or negligent acts, including proof that the defendant's driving or judgment was impaired by drinking. In determining that the Commonwealth was permitted to proceed on an alternative theory of involuntary manslaughter, the Court stated that "in order to bar a subsequent prosecution for a different offense arising out of the same transaction, a necessary element of the offense in the second trial must have been clearly adjudicated in the earlier proceeding." 220 Va. at 415, 258 S.E.2d at 570. The Court reversed the case and remanded for further proceedings.

In my opinion, we should reverse and remand this case as the Virginia Supreme Court did in *Simon.* Proof that Sevachko was driving on the date of the charged offense was not a necessary and essential element to prove the perjury offense; whether Sevachko testified falsely about driving was the essential element of the perjury prosecution and that fact could have been proven by evidence other than proof that Sevachko was, in fact, driving. A line of cases cited by Judge Annunziata in her concurring opinion support the rationale and result that I find to be most sound. The Commonwealth is only estopped from proving that Sevachko was, in fact, driving but is not precluded from proving that he perjured himself in other respects, such as by discrediting his alibi that he was having his car repaired or by an admission from him that he had perjured himself. Even though the fact finder may in such situations incidentally or necessarily conclude that Sevachko was driving based on other proof that he perjured himself, the Commonwealth does not violate the constitutionally based collateral estoppel doctrine by proving, by such other evidence, that Sevachko lied when he testified that he was not driving. In short, the only bar created by the collateral estoppel doctrine in this case is that the Commonwealth cannot prove Sevachko perjured himself by proving that he was, in fact, driving. *See United States v. Carter,* 60 F.3d

1532 (11th Cir.1995); *United States v. Haines*, 485 F.2d 564 (7th Cir.1973); *Adams v. United States*, 287 F.2d 701 (5th Cir.1961); *State v. Hutchins*, 746 A.2d 447 (N.H.2000); *People v. Briddle*, 84 Ill.App.3d 523, 40 Ill.Dec. 265, 405 N.E.2d 1357 (1980).

I reject the proposition, which is central to both Judge Bumgardner's and Judge Annunziata's analyses, that because the fact finder necessarily determined Sevachko's credibility and determined that he had testified truthfully, the Commonwealth is estopped by the acquittal of proving he perjured himself in that proceeding. Again, their approaches carry the holding in *Ashe v. Swenson* to an illogical extreme; the holding in *Ashe* precludes the Commonwealth from relitigating the fact that Sevachko was driving, but it does not prevent the Commonwealth from proving perjury by other means. It is not the fact that the fact finder may have made a credibility determination that precludes the prosecution, but the fact that an essential issue has already been litigated that precludes the prosecution. If the credibility of the defendant was a dispositive and critical factor, we would have the anomalous situation of the person who had been acquitted by virtue of his false testimony being immune from a perjury prosecution, but the defendant who was convicted and, thus, found not credible would remain subject to prosecution. I would remand the case for further proceedings, if the Commonwealth be so advised.

Nevertheless, we must reverse the conviction, in my opinion, due to trial court error in admitting the testimony of Officer A.J. Gluba that Sevachko was driving on a suspended license on December 24, 1995. I agree that *Ashe* precludes use of Officer Gluba's testimony that Sevachko was driving in order to prove Sevachko had testified falsely. The Commonwealth is estopped from proving or litigating a second time whether Sevachko was driving at the time of the charged offense. Thus, I would reverse on that ground and remand rather than dismiss.

Because I would reverse and remand this case, I find it necessary to address the question whether the trial court erred by admitting the testimony of Cynthia Murray, over Sevachko's objection that her testimony was protected by the attorney-client privilege and thus, inadmissible. The facts viewed in the light most favorable to the Commonwealth, the prevailing party, proved that after Sevachko was charged with having driven on a suspended license, the general district court appointed Cynthia Murray to represent him. Prior to trial, Murray informed the trial court that she was confronted with a "dilemma," and the trial court permitted her to withdraw. Sevachko, who had a second attorney appointed to represent him, was subsequently found not guilty of the driving on a suspended license charge after testifying that he had not been driving on the date alleged.

Several months prior to Sevachko's trial on the driving on a suspended license charge, Murray became employed with the Albemarle County Commonwealth's Attorney's office, the office that was prosecuting the driving case against Sevachko. Subsequent to Sevachko's acquittal of those charges, Murray heard the case being discussed in the office. She made "an extemporaneous statement to [her] boss" that Sevachko "was a former client of mine, I remember that case, he told me that he was going to say he wasn't driving." Murray and the Commonwealth's Attorney then consulted the Code of Professional Responsibility and concluded that the Code required Murray to disclose to the circuit court what had occurred. Murray filed a report with the Charlottesville Police Department and the City of Charlottesville Commonwealth's Attorney's office and, as a result, the Commonwealth's Attorney indicted Sevachko for perjury. Murray testified at trial voluntarily and did not assert the attorney-client privilege on behalf of her client. Sevachko objected, arguing that his confidential discussions with his attorney were protected by the attorney-client privilege. The trial judge ruled that Murray's testimony did not violate the attorney-client privilege because it came within the crime-fraud exception, requiring disclosure of a party's intention to commit a crime or a fraud upon the court.

The relationship between an attorney and [her] client is a sacred one. In that relationship, the client must be secure in the knowledge that any information he reveals to counsel will remain confidential. The confidentiality of the attorney-client relationship is severely compromised, if not destroyed, when, after representing a client, a lawyer joins in the criminal prosecution of that client with respect to the identical matter about which the attorney originally counseled the client. Such switching of sides is fundamentally unfair and inherently prejudicial. Without question, the client's right to a fair trial, secured by the due process clauses of the fifth and fourteenth amendments, is compromised under these circumstances.

*United States v. Schell,* 775 F.2d 559, 565 (4th Cir.1985).

Murray disclosed two confidences that her client, Sevachko, had confided in her concerning the subject of the litigation. First, she disclosed to her employer, the Albemarle County Commonwealth's Attorney, that Sevachko informed her that he was driving the automobile on the date charged. Second, she also disclosed that Sevachko told her he intended to testify untruthfully that he was not driving and, as a result of that disclosure, she sought and obtained leave of court to withdraw as Sevachko's court-appointed attorney. We do not decide whether these disclosures to her employer violated the Code of Professional Responsibility DR 4–101 (1999); however, the disclosure to her employer resulted in Murray voluntarily disclosing the same evidence in the perjury prosecution against her former client. Thus, the issue on appeal is whether the disclosures and communications by Sevachko to his attorney were privileged and whether the trial judge erred by admitting the evidence over Sevachko's objection in violation of that privilege.

Clearly, Sevachko's disclosure to Murray that he was driving on the date of the charged offense was the primary issue in the case and was made in relation to and during the attorney's representation of her client. In my opinion, that communication was confidential and privileged and not subject to disclosure. *See* DR 4–101. The trial judge erred, in my

opinion, by failing to recognize the attorney-client privilege and to sustain Sevachko's objection to having his attorney disclose the confidence.

As to Murray's testimony that Sevachko told her he was going to testify falsely, Murray would have been required by DR 4–101 to have disclosed any crime or fraud which Sevachko perpetrated upon the court during the course of Murray's representation of him. Had she continued to represent Sevachko and had Sevachko persisted in the fraudulent or criminal course, Murray would have been required by DR 4–101 to prevent a crime or fraud from being perpetrated upon the court by disclosing the fraud to the court. However, here the crime or fraud that Sevachko allegedly perpetrated on the court occurred after, not during, Murray's representation of Sevachko. Accordingly, the crime-fraud exceptions to the attorney-client privilege, which are embodied in DR 4–101(C)(3) and (D)(4), do not apply. Thus, in my opinion, the communications by Sevachko to Murray, which included his future intentions concerning the case, were still privileged. The trial court erred by holding that the communications were not protected by the attorney-client privilege.

In summary, because the Commonwealth was estopped from proving by Officer Gluba that Sevachko was driving and because Murray's testimony was privileged, I concur in reversing the perjury conviction, but I dissent from the majority's holding that Sevachko's acquittal of the driving on suspended license charge collaterally estopped the Commonwealth from prosecuting Sevachko for perjury. In my view, the Commonwealth could proceed with the perjury prosecution, provided it could do so without proving and relitigating the fact that Sevachko was driving. I would remand the case for such further proceedings as the Commonwealth may be so advised.