MEIERHENRY, Justice
(dissenting).
[¶ 15.] I would affirm the circuit court because the State made Danielson’s claim of repairing Dr. Cox’s 1950 Studebaker truck central to its case and necessary for the jury’s verdict. The State charged Danielson of converting seven checks belonging to Rocket Lube. The checks were payment for repairs to Dr. Cox’s vehicles. Danielson claimed that he was entitled to the checks because of a side agreement with Dr. Cox. The State attacked Daniel-son’s credibility by presenting in its casein-chief, Jake Jansevic, Rocket Lube’s manager, and Rich Parcels, a mechanic, to testify that no work had been done on Dr. Cox’s Studebaker as Danielson claimed.
[¶ 16.] Danielson described his work on the Studebaker’s transmission to the jury. He presented photographs of the transmission and clutch discs he claimed to have replaced. Parcels and Jansevic disputed Danielson’s claim of repairing the transmission. Parcels claimed the transmission appeared untouched. He also claimed that Danielson’s photos depicted discs that would not have fit the transmission. Parcels concluded Danielson had not worked on the transmission. Danielson explained that the reason the transmission did not appear recently modified or opened was because of the way he accessed it. Daniel-son further testified that the pictured transmission discs were interchangeable and capable of being installed in the Studebaker’s transmission.
[¶ 17.] The State’s theory of the case was that Danielson was getting “blank checks from [Dr. Cox] for work as a Rocket Lube employee” and that “those cheeks belonged to Rocket Lube.” The State argued during closing argument that its witnesses established that “the transmission had no evidence of being opened up” and *359 that the clutch discs from the transmission were old. The State also stated that Dan-ielson’s contention that he performed work on the transmission was “not true.” Finally, the State told the jurors that if they believed [Danielson’s] explanations, “then [the jurors] should find him innocent.” This is exactly what the jury did on all counts of theft. Because the State presented the case in this way, Danielson’s credibility concerning whether he worked on the transmission was implicit in the verdict.
[¶ 18.] The United States Supreme Court in Ashe set forth the manner of inquiry to guide courts in deciding when collateral estoppel applies in criminal cases. 397 U.S. at 444, 90 S.Ct. at 1194. The rule “is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality.” Id. If the prior conviction is by a general verdict, a court is required “to ‘examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.’ ” Id. (citation omitted). A court’s “inquiry ‘must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.’ ” Id. (citation omitted). Ashe rejected technically restrictive tests, especially “where the first judgment was based upon a general verdict of acquittal” because “[a]ny test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.” Id.
[¶ 19.] In Flittie, this Court applied the dictates of Ashe, and stated that a reviewing court’s main inquiry is “whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.” 318 N.W.2d at 348 (quoting Ashe, 397 U.S. at 444, 90 S.Ct. at 1194). The inquiry is a practical analysis of all the circumstances of the prior proceedings, including “the pleadings, evidence, charge, and other relevant matter[s].” Consequently, whether collateral estoppel bars a subsequent perjury prosecution based on testimony from a prior case depends on the unique facts and proceedings of the case.
[¶ 20.] The Fourth Circuit Court of Appeals found double jeopardy applied in a case with similar facts. United States v. Nash, 447 F.2d 1382 (4th Cir.1971). Nash was tried for postal theft of “marked” coins from an envelope. Id. at 1383. Nash testified in her defense that she received the coins from a change machine. She was acquitted. The government then brought a perjury charge based on her testimony that she got the coins from the change machine. Id. at 1384. The government conceded that Nash’s testimony was “highly material,” but argued that “procurement or possession of the coins was not an element of the mail offense.” Id. at 1384. At trial, the government presented evidence that the change machine could not recycle marked coins. The jury found Nash guilty of perjury. On review, the Fourth Circuit reversed the verdict on the basis of collateral estoppel. Relying on the prescriptions set forth in Ashe, the court determined that “the jury in the first case undoubtedly passed upon the believability of [ ] Nash’s statements made under oath.” Id. at 1385.
Of course, the Government did not have to prove that she had not obtained the coins as she explained, but it did have the burden of establishing that she had *360 taken the letter containing the coins from the mail. The change machine explanation was part of her defense and had to be weighed by the jury. Consequently, it cannot have been simply a collateral issue. While she was under no obligation to prove that the coins had not come from the mail box, still when her story was adduced, it created a conflict with the Government’s proof. There were but two conflicting explanations of her possession to be considered. Thus, the jury ‘necessarily’ had to pass upon the truthfulness of her account. The issue was ‘crucial’ and once adjudicated, its redetermination in a trial for another offense is estopped.

Id.

[¶ 21.] A comparable analysis applies here. The State did not have to prove that Danielson failed to perform work on the transmission, but it did have to prove that the checks and parts Danielson received belonged to Rocket Lube. The side agreement with Dr. Cox was part of Danielson’s defense that he was in lawful possession of the checks. The jury had to weigh the truthfulness of his defense. Consequently, the side agreement and whether he worked on the transmission were not simply collateral issues. The jury had before it two conflicting explanations. The jury “necessarily” had to pass upon the truthfulness of Danielson’s explanation. Id. Therefore, Danielson’s credibility concerning whether he performed the work for Dr. Cox was “crucial,” and the State should be collaterally estopped from retrying that same issue in a subsequent perjury trial. Id.
[¶ 22.] The circuit court correctly ruled in this case. The circuit court looked at this in “a practical frame” with “an eye to all the circumstances of the proceedings.” Ashe, 397 U.S. at 444, 90 S.Ct. at 1194. The question on appeal is whether a rational jury could have decided this case without deciding whether Danielson was telling the truth about working on the transmission. I would answer this question in the negative because of the way the State tried the case. The prosecutor told the jurors to base their decision on how they judged Danielson’s credibility. The majority concludes that the jury could have disbelieved Danielson and still found him not guilty of theft. This conclusion ignores the State’s presentation of evidence and argument to the jury. The challenge to Danielson’s credibility hinged on whether he was telling the truth about working on the transmission. It is difficult to imagine how a rational jury would have returned a not guilty verdict without finding Danielson credible. Consequently, I would affirm the circuit court’s dismissal of the State’s perjury indictment.